DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Lorenzo Lott, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On June 13, 2004, Appellant robbed a Duke and Duchess store located in Akron, Ohio. During the course of the robbery, Appellant grabbed one store clerk and threw her to the ground and struck another clerk repeatedly with the weapon he used to commit the crime. As a result of his actions, Appellant was indicted on one count of aggravated robbery, in violation of R.C. 2911.01(A)(1), two counts of kidnapping, in violation of R.C. 2905.01, and one count of felonious assault, in violation of R.C. 2903.11(A)(2). Each kidnapping charge and the robbery charge contained a firearm specification.
 {¶ 3} At trial, Appellant did not contest that he had committed the robbery and kidnappings. Appellant's sole contention at trial was that he did not use a firearm during the course of the crimes. In support of his argument, Appellant produced a Marksman BB gun several days before trial and argued that he had committed the robbery using the BB gun. Following a bench trial, the court found Appellant guilty on each of the charges, including the firearm specifications. The court then sentenced Appellant to seven years in prison. Appellant timely appealed his conviction, raising three assignments of error. As Appellant's assignments of error are related, they will be addressed together.
 II. ASSIGNMENT OF ERROR I
"THE CONVICTION OF THE APPELLANT FOR THE FIREARM SPECIFICATIONS AS CONTAINED IN COUNTS ONE, TWO, AND THREE OF THE INDICTMENT IN THIS CASE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED[.]"
 ASSIGNMENT OF ERROR II
"THE TRIAL COURT INCORRECTLY DENIED APPELLANT'S MOTION FOR ACQUITTAL IN VIOLATION OF CRIMINAL RULE 29; SPECIFICALLY, THERE WAS NOT SUFFICIENT EVIDENCE TO THE PROVE THE FIREARM SPECIFICATIONS BEYOND A REASONABLE DOUBT[.]"
 ASSIGNMENT OF ERROR III
"THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT AND IN VIOLATION OF CRIMINAL RULE 29(A), ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL."
 {¶ 4} In his assignments of error, Appellant argues that insufficient evidence was produced to sustain his convictions for the firearm specifications and that his convictions for those specifications were against the manifest weight of the evidence. This Court disagrees.
 {¶ 5} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
Therefore, we will address Appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of Appellant's claim of insufficiency.
 {¶ 6} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 7} R.C. 2923.11(B) provides as follows:
"(1) `Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.
"(2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."
Additionally, the Ohio Supreme Court has held:
"it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Thompkins, 78 Ohio St.3d at 384.
With that guidance, we examine Appellant's contention that his convictions for the use of a firearm were against the manifest weight of the evidence.
 {¶ 8} In its case, the State presented the testimony of Tammy Artrip, an employee at the Duke and Duchess. Ms. Artrip testified as follows. Appellant entered the store with a large jug and asked that it be filled with water. When Ms. Artrip returned the jug to Appellant, he grabbed the security door Ms. Artrip had opened and kept it open. Appellant then dragged Ms. Artrip into the merchandise section of the store and threw her to the ground. Appellant then began fighting with another Duke and Duchess employee, Kathren Tucker. Following the fight, Appellant then pointed his gun at Ms. Artrip and ordered her to give him money. Ms. Artrip described the gun as "black" and "kind of long." She went on to testify that she was scared "[b]ecause [the gun] was in my face."
 {¶ 9} Ms. Artrip continued her testimony as follows. Appellant forced her and Ms. Tucker behind the counter and ordered them to lie down, still pointing the gun at them. Appellant then ordered Ms. Artrip to get back up and open the register for him, and she complied. Appellant then grabbed the money from the register and ran out of the store.
 {¶ 10} Ms. Tucker was also called by the State to testify, and she gave the following testimony. Initially, Appellant grabbed her by the hair and the two began to fight. During the fight, Appellant repeatedly struck Ms. Tucker with the gun. Appellant stopped hitting Ms. Tucker momentarily when he went and stopped Ms. Artrip from leaving the store. Ms. Tucker attempted to attack Appellant during this interval, and Appellant used the gun to halt her attack as follows:
Prosecutor: "And the gun at that point in time was pointing where?
Ms. Tucker: "Directly at my face."
Ms. Tucker went on to testify that she also remembered that the gun was black but that she could not give a detailed description of it. Appellant then ordered Ms. Tucker up to the register with Ms. Artrip and demanded money from them while pointing the gun at Ms. Artrip.
 {¶ 11} Finally, the State elicited the testimony of Detective William Bosak. Detective Bosak testified that Ms. Artrip and Ms. Tucker reported the crime and gave descriptions that matched their earlier testimony. He also testified that a security camera from the store was obtained which contained footage of the robbery. The detective also testified that Ms. Artrip and Ms. Tucker identified Appellant from a photo array following a review of several hundred pictures. He testified that Appellant was subsequently arrested and that he had the opportunity to interview Appellant following his arrest.
 {¶ 12} Detective Bosak continued his testimony regarding the specifics of the interview with Appellant, testifying as follows. Appellant first denied any involvement with the robbery, but changed his story when confronted with his picture taken from the security camera. Appellant then admitted to being involved in the robbery and that he used a "cigarette lighter type gun" that someone named Cecil had given him. Appellant claimed that this unidentified man named Cecil forced him to commit the robbery. However, Appellant produced no further information regarding Cecil, including his last name, where he could be located, or how Appellant knew him.
 {¶ 13} In support of his trial strategy, Appellant cross-examined the State's witnesses and elicited the following testimony. Ms. Artrip could not state whether the gun used in the attack was real or fake, only that it was a black gun. Ms. Tucker also stated that she could not say with certainty that the gun was real and that its barrel was longer than she had seen on guns carried by police officers. Detective Bosak examined the BB gun introduced by Appellant, noting that it weighed under a pound and fired through the use of carbon dioxide cartridge. Detective Bosak also testified that the shape of the BB gun was unusual when compared to a typical gun in that its barrel was longer.
 {¶ 14} Following the close of the State's case, Appellant introduced the BB gun into evidence and rested his case. Based upon the above evidence, Appellant argued to the trial court that the State had failed to prove beyond a reasonable doubt that he used a firearm in the commission of an offense. The trial court disagreed, finding that the State had proven beyond a reasonable doubt that a firearm had been used. We cannot say that the trial court lost its way in making its finding.
 {¶ 15} The facts as presented through the State's witnesses demonstrate that Appellant implicitly threatened both Ms. Artrip and Ms. Tucker. He ordered each woman around the store at gun point, at times pointing the gun directly at their faces. He ordered them to the ground and ordered Ms. Artrip to open the cash register, all while pointing the gun at both women. Based upon Thompkins, these implicit threats satisfy the State's burden. Thompkins, 78 Ohio St.3d at 383-384 (finding that the defendant's statements that this was a `holdup' and to be `quick, quick' were sufficient to meet the State's burden in proving the use of a firearm).
 {¶ 16} Appellant, however, contends that he affirmatively demonstrated through the security video and the introduction of the BB gun that a firearm was not used. We disagree.
 {¶ 17} No testimony was offered that would tend to prove that the BB gun was used during the robbery. Detective Bosak could not state whether or not the BB gun was the weapon used in the security video. Further, the BB gun was produced by Appellant only a few days before trial, well after Appellant had lied to the police about his involvement in the robbery and the type of weapon he used to commit the crime. At best, the evidence presented by Appellant is equivocal. The State presented evidence that could support a conclusion that the BB gun was produced by Appellant solely to lessen his sentence. Appellant argued that the BB gun was found through information provided to his counsel only because police had failed to properly investigate the crime at the time of its occurrence. Appellant further relied upon a grainy security video which, upon review, cannot be said to positively identify the weapon used by Appellant.
 {¶ 18} This Court will not overturn a verdict on a manifest weight challenge simply because the trier of fact chose to believe the State's witnesses rather than the Appellant's witnesses. State v. Merryman, 9th Dist. No. 02CA008109, 2003-Ohio-4528, at ¶ 28. In the instant matter, the Court chose to rely on the implicit threats testified to by Ms. Artrip and Ms. Tucker, rather than the evidence produced by Appellant. As such, we cannot say that the trial court clearly lost its way in convicting Appellant for the use of a firearm during the commission of a crime. Having disposed of Appellant's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency.Roberts, supra, at 4. Accordingly, Appellant's assignments of error are overruled.
 III. {¶ 19} Appellant's assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J.
Batchelder, J. concur.